# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT MALVESTUTO, JR.,** | : | CIVIL ACTION NO. 1:09-CV-1339 |
| | : | |
| Petitioner | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **WARDEN JERRY C. MARTINEZ,** | : | |
| | : | |
| Respondent | : | |

## MEMORANDUM

Petitioner Robert Malvestuto ("Malvestuto") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on July 13, 2009, seeking an order compelling respondent to reconsider petitioner's request for pre-release custody placement in a residential re-entry center ("RRC")[1] for the last twelve months of his sentence in accordance with the Second Chance Act of 2007. (Doc. 1). For the reasons that follow, the petition will be dismissed without prejudice for failure to pursue available administrative remedies.

## I. Background

Malvestuto, a federal inmate presently incarcerated at the Low Security Correctional Institute at Allenwood ("LCSI-Allenwood"), was sentenced on January 29, 2007, in the United States District Court for the Western District of New York. He is serving the remainder of a fifty-one month term of imprisonment for

---

[1] Prior to March 31, 2006, RRC's were referred to Community Corrections Centers ("CCCs"). (Doc. 6-2, Declaration of Bruce Beaver ("Beaver Declaration"), Federal Bureau of Prisons case manager at LSCI-Allenwood, at 5, ¶ 3, n.1.) They are commonly known as halfway houses. (Id.)

racketeering conspiracy in violation of 18 U.S.C. § 1962(D). (Doc. 6-2, Declaration of Bruce Beaver ("Beaver Dec."), Federal Bureau of Prisons case manager at LSCI-Allenwood, at 4, ¶ 2.) His projected release date is December 8, 2010, *via* good conduct time release. (Id.)

On April 9, 2008, the Second Chance Act of 2007, Pub. L. No. 110-199, Title II, § 251, 122 Stat. 657, 692 (the "Second Chance Act"), codified at 18 U.S.C. §§ 3621, 3624 was signed into law. The Act increases the duration of pre-release placement in an RRC from six to twelve months and requires the BOP to make an individual determination that ensures that the placement be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(C) (Apr. 9, 2008).

Recommendations for RRC placement are ordinarily reviewed with the inmate and Unit Team seventeen to nineteen months prior to the inmate's probable release date. (Doc. 6-2, Beaver Dec., at 5, ¶ 3.) Referrals are then forwarded to the Community Corrections Manager at least sixty days prior to the maximum recommended date. (Id. at ¶ 4, citing BOP Program Statement 7310.04, Community Corrections Center Utilization and Transfer Procedures.)

On July 1, 2009, petitioner was informed by his unit team that they would forward to the Community Correction's Manager a recommendation that he be placed in an RRC between five and six months prior to his release date. (Id. at 5, ¶ 6.) This recommendation was based on "his current offense; available resources within the release district, noting that he has secured residency with his wife and

2

has family support; financial planning, noting that he is not in destitution; employment options/academic history, noting that he has completed several education courses; and his health, noting that he is in good health." (Id. at ¶ 7; Doc. 6-2, "Inmate Skills Development Plan", at 50-61.) "In Petitioner's case, although his referral for community placement has not been completed as of this date [August 10, 2009], his Unit Team will propose a recommendation of 150-180 days in an RRC in compliance with Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 251 (3d Cir. 2005), the Second Chance Act, and the criteria set forth in [BOP] Program Statement 7310.04." (Doc. 6-2, Beaver Dec., at 6, ¶ 8.)

Malvestuto represents that he "has not 'exhausted' the administrative remedy process and would further be prejudiced due to a time constraint if Petitioner were to exhaust his administrative remedies." (Doc. 1, at 3, ¶ 11.)

## II. Discussion

The habeas statute upon which petitioner relies to challenge the timing of his pre-release placement, 28 U.S.C. 2241, unlike other federal habeas statutes, "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." Coady v. Vaughn, 251 F.3d 480, 485 (quoting 28 U.S.C. §§ 2241(a)( and (c)(3)). The United States Court of Appeals for the Third Circuit has concluded that section 2241 is the appropriate means for challenging a decision to exclude an inmate from release to an RRC. See Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 242 (3d Cir. 2005.)

Although Section 2241 does not contain a statutory exhaustion requirement, courts in the United States Court of Appeals for the Third Circuit have consistently required an inmate to exhaust his administrative remedies prior to petitioning for a writ of habeas corpus.  Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) (per curiam)); e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000).  Exhaustion is required for the following reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy."  Moscato, 98 F.3d at 761-62 (3d Cir. 1996) (citations omitted).

The exhaustion procedure to be utilized by federal inmates is the administrative remedy protocol established by the Bureau of Prisons ("BOP") and set forth at 28 C.F.R. §§ 542.10-542.19.  Pursuant to this protocol, an inmate first must present his complaint to staff, and staff must attempt to resolve informally any issue before an inmate files a request for administrative relief.  See § 542.13(a).  If informal resolution proves unsuccessful, the inmate may raise the complaint with the warden of the institution where he or she is confined.  See id.  An inmate has twenty calendar days from the date of the alleged injury within which to complete this informal resolution process.  See § 542.14(a).  If an inmate is dissatisfied with the response received during the informal resolution process, he or she may appeal the decision to the Regional Office and the General Counsel of the BOP.  See

§ 542.15. A BOP decision is not final—and thus not reviewable—until relief has been denied by the General Counsel's Office. Id. If at any point an inmate misses a deadline imposed by federal regulations, BOP policy requires that the inmate seek an extension of time within which to file his or her grievance. See § 542.14(b). Acquisition of an extension requires that an inmate provide a "valid reason for the delay." Id.

According to BOP records, Malvestuto failed to exhaust his administrative remedies regarding his pre-release placement. (Doc. 6-2, Declaration of Susan Albert ("Albert Dec."), BOP paralegal specialist at the Federal Correctional Complex at Allenwood, at 68-69, ¶¶ 3, 4.) He concedes that he did not exhaust before filing this petition stating that "the administrative remedy process is so time consuming that the filing of the complete administrative remedy process would further prejudice Petitioner as it takes approximately seven to eight months to complete." (Doc. 7, at 1). He takes the position that because the Act presumes a twelve month placement, "the BOP should address the reasons why less than twelve months is appropriate." (Doc. 7, at 2) (emphasis in original).

In an effort to excuse the exhaustion requirement, he argues that if the BOP were to comply with the Second Chance Act, and refer him for a full twelve-month RRC placement, he would have been released to the RRC on July 5, 2009. (Doc. 7, at 1.) He is mistaken. He is scheduled for good conduct time release on December 8, 2010, which would set his twelve-month RRC placement date at December 8, 2009, not July 5, 2009. According to his case manager, as of August 10,

2009, his referral for community placement was not yet complete. (Doc. 6-2, at 6, ¶ 8.)

Malvestuto also urges the court to consider the case of Strong v. Schultz, 599 F. Supp.2d 556 (D.N.J. 2009), a case in which a district court directed the BOP to immediately reconsider the petitioner for RCC placement longer than six months. However, any reliance on Strong in this instance is misplaced because unlike Malvestuto, the petitioner in Strong fully exhausted available BOP administrative remedies prior to filing a petition in federal court.[2]

Exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates that he will be unsuccessful in his administrative appeals before the twelve-month pre-release mark, which is simply a statutory maximum

---

[2] The petitioner in Strong successfully utilized the BOP's administrative remedy process in that his pre-release placement time was increased from sixty days to six months. Strong, 599 F. Supp.2d at 560. Even so, he filed a federal petition seeking twelve-month pre-release placement because he had been diagnosed with HIV/AIDS and needed to obtain medical care and substance abuse treatment before securing employment. Id.
It is also worth noting that on April 14, 2008, five days after enactment of the Second Chance Act, the BOP issued a memorandum which provided that in the event that staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager. This memorandum was in place when Strong's pre-release placement was considered. On October 21, 2008, the BOP adopted a new regulation entitled "Time-frames", which authorizes BOP staff to designate inmates to an RRC for the final 12 months of the sentence without obtaining permission from the Regional Director. See 28 C.F.R. § 570.21(a) (Oct. 21, 2008) ("Inmates may be designated to community confinement as a condition of prerelease custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months"). This regulation was in effect when Malvestuto's pre-release placement was evaluated by his unit team.

and not a mandate.  See 18 U.S.C. 3624(c)(1)-(6).  Malvestuto had adequate time to exhaust his administrative remedies prior to seeking relief in federal court.  See Torres v. Martinez, No. 09-1070, 2009 WL 2487093 (M.D.Pa. August 12, 2009) (dismissing petition for failure to initiate administrative review); Shoup v. Schultz, No. 08-3821, 2009 WL 1544664 at * 3 (D.N.J. June 2, 2009) (same); Cooper v. Grondolsky, No. 09-2970, 2009 WL 2049168 at *4 (D.N.J. July 08, 2009) (refusing to excuse petitioner's failure to at the very least submit an administrative remedy request to the Warden); Breazeale v. Shultz, 09-2118, 2009 WL 1438236 at *3 (D.N.J. May 19, 2009) (same); Miceli v. Martinez, No. 08-1380, 2008 WL 4279887 (M.D.Pa. Sept. 15, 2008) (dismissing petition without prejudice for failure to exhaust administrative remedies).  Accordingly, the court will dismiss the petition for a writ of habeas corpus for failure to pursue administrative remedies.

## III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be dismissed without prejudice for failure to pursue administrative remedies.

An appropriate order follows.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:       September 1, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT MALVESTUTO, JR.,** | : | **CIVIL ACTION NO. 1:09-CV-1339** |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **WARDEN JERRY C. MARTINEZ,** | : | |
| Respondent | : | |

## **ORDER**

AND NOW, this 1st day of September, 2009, upon consideration of the petition for writ of habeas corpus (Doc. 1), it is hereby ORDERED that:

1. The petition (Doc. 1) is DISMISSED without prejudice.

2. The Clerk of Court is directed to CLOSE this case.

        S/ Christopher C. Conner
        CHRISTOPHER C. CONNER
        United States District Judge